# SHOP AGREEMENT

## between

# ARCHITECTURAL METALS AND

# STORE FRONT CONTRACTORS

# ASSOCIATION

## and

## DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO

## July 1, 1997 through June 30, 2002

## TABLE OF CONTENTS

**Article**                                                    **Page**

Preamble                                                          1
I.     Jurisdiction and Union Security                           1

Section 1.    Covered Employees                                  1
Section 2.    Non-Discrimination                                 1
Section 3.    Contract Rate                                      2
Section 4.    Recognition of Exclusive Bargaining Agent          2
Section 5.    Labor Force                                        2
Section 6.    Union Security                                     2

II.     The Trade Association                                    3
Section 1.    Membership Lists                                   3
Section 2.    Recognition by the Trade Association               3
Section 3.    Changes in Membership                              3
Section 4.    New Members                                        3

III.     Terms and Conditions of Employment                     4
Section 1.    Employment of Covered Employees                   4
Section 2.    The Work Week                                     4
Section 3.    The Work Day                                      4
Section 4.    Overtime and Holiday Work                         4
Section 5.    Touch-up Work                                     4
Section 6.    Deliveries                                        4
Section 7.    Lay-off                                           5
Section 8.    Second Shift                                      5
Section 9.    Installation of Custom Store Front and Architectural
              Metals Products Manufactured in the Employer's Shop   5

IV.     Outside Construction Work or Installation of
        Any Work Not Covered by Article II, Section 9           6

V.     Holidays                                                 10
Section 1.    Contract Holidays                                 10
Section 2.    Work Performed on Holidays                        10
Section 3.    Labor Day                                         11

VI.   Wages    11
Section 1.   Wage Rates    11
Section 2.   Increases and Allocations of Increases    12
Section 3.   Pay-Checks    12
Section 4.   Drivers    13

VII.   Union Label    13
Section 1.   The Union Label    13
Section 2.   Application    13

VIII.  Apprenticeship System    13
Section 1.   Apprenticeship Training Plan    13
Section 2.   Ratio of the Apprentices to Journeymen    14
Section 3.   Conformity with Prevailing Law    14

IX.   Shop Steward    14

X.   Fringe Benefits    14
Section 1.   Contributions    14
Section 2.   Welfare and Pension    15
Section 3.   Apprenticeship Fund    15
Section 4.   Vacation Fund    15
Section 5.   Annuity Fund    15
Section 6.   Supplemental Fund    15
Section 7.   The National Labor Management Committee
For the Custom Woodworking Industry Fund    16
Section 8.   Audits    16
Section 9.   Re-allocations    16
Section 10.  Trust Agreements and Bylaws    16
Section 11.  Default and Breach    17
Section 12.  Arbitration    18
Section 13.  Stamp Plan    18
Section 14  Hours Worked    19

XI.   Bonding    19

XII.   Dues Check Off    20
Section 1.   Dues Deduction    20
Section 2.   Remittance of Dues    20
Section 3.   Renewal of Authorizations    20

XIII.  Hardship and Advisory Committee
Section 1.    Establishment of Board    20
Section 2.    The Committee and its Purpose    21

XIV.  Grievance and Arbitration    21
Section 1.    Grievance    21
Section 2.    Lock-outs and Strikes    21
Section 3.    Lay-Off of Shop Steward    22
Section 4.    Prevention of Job Discrimination    22

XV.  Loss of Tools or Clothing    22

XVI.  Death Bereavement    23

XVII. Work Week Modification    23

XVIII.Continuity of Contract    23

XIX.  Joint Venture    23

XX.Other Operations    24
Section 1.    Work Preservation Clause    24
Section 2.    Fees and Costs    24

XXI.  Union Access    25

XXII. Prior Benefits    25

XXIII.Industry Promotional Fund    25

XXIV.Management Rights    26

XXV.Automatic Renewal and Expiration    26

XXVI.Savings Clause    27

XXVII.Retroactivity    28

## AGREEMENT

**THIS AGREEMENT** made this 1ST day of JULY, **1997 and effective July 1, 1997,** between the **ARCHITECTURAL METALS & STORE FRONT CONTRACTORS ASSO-CIATION,** on behalf of itself and its Employer-Members (the "*Employer*" or "Trade Association") and **THE DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO** (the "*Union*" or "*District Council*").

## PREAMBLE

This Agreement is entered into: (a) to prevent strikes and lockouts; (b) to facilitate the peaceful adjustment of grievances and disputes between the Employer and the Union; (c) to prevent waste, unnecessary and avoidable delays which incur costs and expenses to the Employer and lost wages and benefits to the employees covered by this Agreement; (d) to enable the Employer to secure at all times sufficient forces of skilled employees in the continuous employment of labor; (e) to provide that employment hereunder shall be in accordance with conditions and at wages herein which are agreed upon, and by reason of this Agreement and the purposes and intent hereof, to bring about stable conditions in the Industry; and (f) to keep labor costs in the industry as low as possible, consistent with fair wages and proper working conditions, as provided for hereunder.

## Article I
## JURISDICTION AND UNION SECURITY

**Section 1**. Covered Employees. As used in this Agreement, the words "*employees covered by this Agreement*" and "covered employees" include all foremen, journeymen mechanics, carpenters, bench hands, machine men, cabinet makers, model makers, sprayers, varnishers, wood finishers, wood carvers, and turners, kalamein men, apprentices, helpers, utility workers, unskilled and semi-skilled production workers, metal workers and all other employees doing production and maintenance work, except a caretaker of a building.

**Section 2**. Non-Discrimination. **(a)** The parties agree that there shall be no discrimination in the employment, hiring or training of employees in the bargaining unit on the basis

of race, creed, color, sex, national origin, age, disability, marital status, citizenship status, sexual orientation or affectional preference in all employment decisions, or union activity as defined in applicable federal, state or local laws. For the purposes of this **Section 2**, "*citizenship status*" means the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

(b)  The provisions of this Agreement shall apply to all employees covered by this Agreement without regard to union membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of union membership, policies or requirements except as provided herein.

Section 3.  Contract Rate.  It is hereby understood and agreed that all of the employees covered by this Agreement shall work at the rate of wages and hours provided for in this Agreement.

Section 4.  Recognition of Exclusive Bargaining Agent.  The Employer recognizes the Union as the exclusive bargaining representative for all covered employees referred to in **Article I, Section 1.**

Section 5.  Labor Force.  The Union shall furnish, until the expiration of this Agreement, or any renewal Agreement, in a reasonable time after request, except in cases of strikes and other circumstances over which it has no control, all foremen, journeymen mechanics, carpenters, bench hands, machine men, cabinet makers, model makers, sprayers, varnishers, wood finishers, wood carvers, and turners, kalamein men, apprentices, helpers, utility workers, unskilled and semi-skilled production workers, metal workers and all other employees doing production and maintenance work.

Section 6.  Union Security.  All employees who are members of the Union at the time of the signing of this Agreement shall continue membership in the Union.  All other employees must become members of the Union thirty (30) days following the beginning of employment or the date of this Agreement, whichever is later, and must maintain their membership in the Union as a condition of continued employment.  The Employer shall notify the Shop Steward or the Business Representative when a new employee is hired.  If the provisions for Union Security clauses are modified by Congress during the term of this Agreement, this clause shall automatically be modified to conform to such changes.

## Article II
## <u>THE</u> <u>TRADE</u> <u>ASSOCIATION</u>

**Section 1.** <u>Membership Lists</u>.  The Employer, who is a trade association, will provide to the Union a list of its members who have designated the Employer as their exclusive bargaining agent, and who have agreed to be bound by the terms and conditions of this Collective Bargaining Agreement.  The Employer shall furnish the Union with an Affidavit from each Member it represents or may represent, authorizing it to represent said member.

**Section 2.** <u>Recognition by the Trade Association.</u>  The Trade Association hereby recognizes the Union as the exclusive Collective Bargaining Agent on behalf of those employees covered by this Agreement and the Union recognizes the Trade Association as the Collective Bargaining Agent on behalf of those Employers who have heretofore or who will hereafter authorize the Association to act on their behalf.  It is agreed that for all purposes of this Agreement, the Association and the Union are the principal parties and the individual employees and Employers are the secondary parties.

**Section 3.** <u>Changes In Membership</u>.  The Employer will notify the Union of any changes in its membership.  If any Employer resigns or is expelled from the Trade Association, all obligations of the Association with respect to such Employer shall terminate and come to end simultaneously with the termination of the departing Employer's membership. The Union may either continue the binding force of the Agreement with respect to such Employer (without the Association) with the same force and effect as if this Agreement had been entered into between the Union and such Employer directly, or terminate this Agreement and bring it to an end insofar as it may affect such Employer by giving the Employer five (5) days notice thereof; and, thereafter, bind such Employer to a new Agreement.

**Section 4.** <u>New Members.</u>  The Employer agrees that it will not accept any Employer as a member of the Trade Association unless the Union has indicated, in writing, that at the time of application for membership, said Employer is current on its fringe benefit contributions to the New York City District Council of Carpenters Benefit Funds and has posted a surety bond or escrow with the Fringe Benefit Funds.

## Article III
## TERMS AND CONDITIONS OF EMPLOYMENT

**Section 1.** Employment of Covered Employees. The Employer shall employ, until the expiration of this Agreement (or any renewal agreement), all of the employees covered by this Agreement upon the following terms and conditions.

**Section 2.** The Work Week. The work week shall be five (5) days from Monday to Friday, inclusive.

**Section 3.** The Work Day. Eight (8) hours shall constitute the working day. Hours shall be from 8:00 A.M. to 5:00 P.M., unless altered by mutual consent, with one (1) hour for lunch, which may be reduced to one half (1/2) hour upon mutual consent of the parties. When a signatory employer is performing installation, pursuant to **Article IV**, the employer may increase the work day from seven (7) hours to eight (8) hours a day with prior notice to the District Council to account for job site conditions and said established day shall be maintained for the duration of the job.

**Section 4.** Overtime and Holiday Work. When work shall be performed on any other day or outside the hours specified herein, the employees shall be paid time and one-half for all work performed outside the hours specified. Work performed on Contractual Holidays shall be paid at the double time rate. Work performed on Sundays shall be paid at the double time rate. Work performed on Saturdays shall be paid at the rate of one and one-half (1 1/2) times the regular hourly wage rate as herein provided.

**Section 5.** Touch-up Work. Touch-up work shall be permitted at the installation site and shall be permitted to be performed by inside shop employees covered by this Agreement at the rate or rates as herein provided based upon eight (8) hours pay for seven (7) hours work provided such touch-up is mutually agreed to be done pursuant to a punch list given by the Employer's client, general contractor or architect, as the case may be. Finishing and re-finishing at the job site shall be payable at the rates provided in **Article III, Section 9(a)**.

**Section 6.** Deliveries. The Employer may deliver the manufactured woodwork product to its final destination at the job site using employees covered by this Agreement at rates provided herein.

**Section 7.** Lay-Off. Employees covered by this Agreement shall be given one (1) hour notice before being discharged or laid off and shall be paid all accrued wages, by check, and provided accrued benefit stamps for hours worked, at once. If employees covered by this Agreement are hired, they cannot be discharged or laid off until or after the first day's work is completed. This does not apply to any temporary suspension of work during any pay week for reasons beyond the Employer's control.

**Section 8.** Second Shift. A second shift may be established with the written permission of the Union, provided that all of the following conditions are met:

**(a)**     The Employer shall make application for a second shift to the District Council two (2) weeks prior to the commencement of said shift;

**(b)**     No employee who has worked during the first shift in a twenty-four (24) hour period shall be permitted to work any time during the second shift;

**(c)**     The proposed second shift shall be no less than one (1) week's duration, with eight (8) hour work periods not to begin earlier than 5:00 P.M. and providing for a half-hour dinner period;

**(d)**     The Employer shall provide separate lockers for tools and clothing for each employee on the second shift; and

**(e)**     All employees on the second shift shall not receive less than ten percent (10%) additional wages over the wage rate in **Article VI** of this Agreement.

**Section 9.** Installation of Custom Store Front and Architectural Metals Products Manufactured in the Employer's Shop. A signatory Employer who is currently and actively engaged in the manufacturing and installing of custom store front and architectural metals products shall pay employees covered by this Agreement to install said manufactured product(s) at the rates provided herein, provided eighty (80%) percent of said product(s) to be installed was manufactured in the employer's shop. Twenty (20%) percent of said product(s) to be installed may be obtained from other sources, provided said product(s) should bear the union label.

**(a)**     A signatory Employer who meets this criteria shall install said products by selecting five (5) employees at the journeymen wage rate as provided in this Agreement plus twenty-three (23%) percent of said rate and the benefit stamp rate provided in this Agreement. All other employees shall be paid at the cur-

rent prevailing outside construction hourly wage and benefit rates.

**(b)**   The District Council, or such other designated affiliated local union, shall refer the third employee, if a third person is needed by the Employer who the District Council will appoint as shop steward and said employee shall be paid the current prevailing outside construction hourly wage and benefit rates.

**(c)**   One of the employer's selection referred to the job site to install the product(s) may be an apprentice and shall be paid the applicable shop apprentice wage rate plus 23% of the said rate and the benefit rates provided herein.

<h3 style="text-align:center">Article IV</h3>

<h3 style="text-align:center"><u>Outside Construction Work or Installation</u></h3>

<h3 style="text-align:center"><u>of any Work Not Covered by Article III, Section 9</u></h3>

The Employer shall notify the District Council when the Employer performs any work:  **(a)** in outside construction covered by the respective agreements between the Associations and the District Council; or **(b)** installs product or products that do not meet the criteria of **Article III, Section 9** and shall abide by the following conditions:

**(1)**   All employees shall be paid at the outside prevailing construction wage and benefit rate, except as otherwise provided in the Agreement.

**(2)**   All employees who are members of the Union at the time of signing of this Agreement shall continue membership in the Union.  All other employees must become members of the Union seven (7) days following the beginning of employment or the date of this Agreement, whichever is later, and must maintain their membership in good standing in the Union as a condition of continued employment.  If the provisions for Union Security clauses are modified by Congress during the terms of this Agreement, this clause will automatically become modified to conform to such changes.

**(3)**   The Union or its representatives shall not discriminate against a foreman or workers.  Maintenance of Union membership shall be evidenced by the current working card, which shall indicate the current dues have been paid to the Union.

(4)    All employees covered by this Agreement shall have the privilege of working for whomever they see fit, in accordance with the terms of this Agreement, and the Employer is to be at liberty to employ or discharge whomsoever it sees fit, in accordance with the terms of the agreement.

(5)    Employees covered by this Agreement shall not refuse to work with persons who, after seven (7) days' employment, have complied with the Union Security provisions of this Agreement.    However, employees covered by this agreement are not required to work with persons who do not comply with the Union Security provisions of this agreement.  The parties agree that additional employees secured by the employer shall be eligible for and shall comply with requirements of Union membership set forth herein.

(6)    Where a third Carpenter is required, the third Carpenter on the job site shall be referred by the Union and shall be the working job steward.  All other employees shall be referred by the Employer to perform the work covered by this Agreement and should any additional employees be needed they shall be requested by the Employer from the Union.  The Union will cooperate, in order to meet all legal requirements, and furnish qualified Carpenters when requested

(7)    The intent is to maintain the seven hour work day, thirty-five (35) hour work week. During the term of this Agreement the work day may be increased to eight hours work at straight time pay and a forty hour work week at straight time pay to attempt to provide additional work hours for the employee members and the signatory Employer to manage its project and provide increased work opportunities.  Overtime hours Monday through Friday shall be paid at time and one-half.  Saturday pay shall be at the time and one-half.  The Employer is expected to establish and maintain a consistent work week schedule allowing for unusual job-site conditions.  Refusal to work the additional hours shall not be grounds for dismissal for just cause.

(8)    <u>Flexible Starting Time</u>: The normal work day shall start at eight (8) a.m.  and may be changed by the Employer due to work site conditions to start between seven (7) a.m. and nine (9)  a.m. for all or a portion of the employees. Notifi-

cation to the Union will be given by the Employer when changed from the normal eight (8) a.m. starting time.

(9)    Shift Work: The Employer may work two shifts with the first shift starting at the established time to the end of the shift at straight time rate of pay. The second shift will receive one hour at double time rate of pay for the last hour of the shift (eight for seven, nine for eight). In addition, members of the second shift shall be allowed one-half (1/2) hour to eat, with this time being included in the hours of work established. There must be a first shift to work the second shift. All additional hours worked shall be paid at the time and one-half rate.  The Employer shall notify the Union in advance of beginning the shift schedule. On shift work, the Job Steward shall work no more than the shift hours. There shall be a Job Steward on each shift who shall be appointed by the Union. There shall be a pre-job conference with the Union before the commence-ment of any shift work.

(10)    Off-hour Work on Alteration and Repair Work:  When performing alteration or repair work in an occupied building, and when it is not possible to perform said work during regular working hours, said work shall proceed during off hours, as scheduled by the Employer, but starting no later than 8:30 p.m.  The work day and the rate of pay shall be the same as the second shift provisions. In addition, members of the off-hour crew shall be allowed one-half (1/2) hour to eat, with this time being included in the established work day.  All additional hours worked in excess of the shift hours shall be paid at the time and one-half rate.  The Employer shall notify the Union in advance of beginning said off-hour work, which shall be performed subject to the provisions of this **Section** and subject to notification to the Union. There shall be a pre-job confer-ence with the Union before the commencement of off-hours work.

(11)    The Employer may start a portion of the crew one-hour prior to the estab-lished start time at straight time wages due to unusual job site conditions. The Employer will determine the number of employees necessary. The working steward will be part of the early crew. It is understood this is not intended to establish a continuous staggered work day.

(12)    It is further agreed that no work shall be performed on Sundays or Legal Holidays, except in the case of emergency or necessity, and that no work shall be performed then unless notice is given to the District Council on the previous workday, stating location of building where work is to be performed and the number of men required.  DOUBLE TIME SHALL BE PAID FOR ALL WORK ON SUNDAYS, AND LEGAL HOLIDAYS, except as otherwise noted.  Emergency work, INVOLVING DANGER TO LIFE AND PROPERTY, may be performed without permission from the District Council.

(13)    In all cases, the Holidays referred to in this Agreement shall be observed on the day and date established for the State of New York.  When permission is granted to work on such Legal Holidays, double time shall be paid.

(14)    Employees employed on the last legal working day before Christmas Day and before New Year's Day and who report to work on such days, shall receive three (3) hours' afternoon pay without working.  Work performed on the afternoons of said days shall be paid at the double-time rate only.  Fringe Benefit Contributions will be payable on the half-holidays referred to above only on hours actually worked.

(15)    When a Legal Holiday falls on a Sunday and the following day is declared a Legal Holiday, then double-time shall be paid for all hours worked.

(16)    No work shall be performed on Labor Day.

(17)    The Employer agrees that all installation work covered by this Agreement shall be contracted or subcontracted only to an employer who is signatory to or agrees to become signatory to a collective bargaining agreement with the Union. The parties hereto mutually agree with respect to work falling within the scope of this Agreement that is to be done at the site of construction, alteration, maintenance, or repair of any building, structure, or other works, that if the Employer should contract or subcontract any aforesaid works falling within the trade jurisdiction of the Union involving installation as set forth herein, said Employer shall contract or subcontract such only to firms which observe the standards of wages and fringe benefits and working conditions established herein to insure the observance of the wages, benefits, hours, and other items

and conditions of employment provided herein. The fact that the subcontractor is signatory to an agreement with the Union is deemed compliance with this provision.

(18)    Nothing herein shall be construed to prohibit and/or limit the employer's right to purchase up to seventy-five (75%) percent of any custom millwork or product of allied nature from any source in the use of its business, in an arms-length transaction. Such right can be exercised provided the employer does not have an ownership interest, or management, or significant controlling interest of the company from whom the purchase is being made. An employer availing himself of this provision shall not have the benefit of any wage concessions provided in **Article III, Section 9** and all employees installing said custom millwork or product shall be paid the prevailing outside construction wage and employee fringe benefit contribution rate provided in the Independent Building Construction Agreement.

## Article V
## <u>HOLIDAYS</u>

**Section 1.** <u>Contract</u> <u>Holidays</u>. The following holidays shall be unpaid holidays:

| | |
|---|---|
| New Year's Day | Labor Day |
| President's Day | Columbus Day |
| Good Friday | Thanksgiving Day |
| Memorial Day | Day after Thanksgiving |
| Independence Day (July 4th) | Christmas Day |

**Section 2.** <u>Work</u> <u>Performed</u> <u>On</u> <u>Holidays</u>. **(a)** Employees who work on such holidays shall receive double time for all hours worked on a holiday.

**(b)** In the event a holiday falls on a Sunday, it shall be observed on the following Monday. If a holiday falls on a Saturday, it shall be observed on the Friday immediately proceeding the holiday. All work performed on both the Friday immediately proceeding the holiday and the holiday shall be paid at the double time rate. Any work performed on a

Monday or a Friday holiday shall be paid at the double time rate.

**Section 3.**  Labor Day.  No work shall be performed on Labor Day.

## Article VI

## WAGES

**Section 1.**  Wage Rates.  Except as provided hereafter, the minimum rates for employees covered by this Agreement are as follows:

**(a)** JOURNEYMEN: Effective:  July 1, 1997

Per Hour:  $19.08

This journeyman wage rate applies to Journeymen Mechanics, Carpenters, Bench Hands, Machine Persons, Cabinet Makers, Wood Finishers, Model Makers, Wood Carvers, Turners, and Kalamein Persons and Metal Workers including Mechanic On Shears Or Brake (either Hydraulically or Hand Powered), Burner, Welder, Spot Welder, Mechanic On Bench or any other Metal Machine.

**(b)**    FOREMEN: Effective:  July 1, 1997

Per Hour: Journeyman Scale plus 32 % ($25.19)

Foremen in charge of metal workers shall receive the same weekly wage as the Shop Journeyman Carpenter-Foremen.

**(c)**    APPRENTICE Effective:  July 1, 1997

First Year        50%

Second Year 60%

Third Year        70%

Fourth Year   80%

Fifth Year        90% (pre-journeyman)

The rates for Helpers and Unskilled Workers assisting mechanics doing metal work shall be the same as the Carpenter-Apprentice as provided in this **Section 1(c)**.

**(d)** STARTING HELPERS Effective: July 1, 1997

First Year      45%

Second Year  55%

Third Year     70%

Fourth Year   75% (top scale)

**(e)** UTILITY WORKER Effective: July 1, 1997

First two years        35%

Second two years    40%

Fifth Year                45% (top scale)

All rates in **Section 1(b) - (e)** are calculated as a percentage of the Journeyman wage rate provided in **Section 1(a)** of this **Article VI.**

Section 2.  Increases and Allocation of Increases.  All journeymen shall receive the following annual increases, which shall be allocated to wages and/or benefits contributions within the sole discretion of the Union:

| | |
|---|---|
| July 1, 1997 | $1.35 per hour |
| July 1, 1998 | $1.33 per hour |
| July 1, 1999 | $1.07 per hour |
| July 1, 2000 | $1.06 per hour |
| July 1, 2001 | $1.06 per hour |

In all other categories, the increase shall be allocated to wages and/or benefits contributions as determined by the Union and if allocated to wages, these employees shall receive a pro-rata wage increase based on their percentage of journeymen wages.

Section 3.  Pay-Checks.  **(a)**  Wages shall be paid in the shop before 5:00 P.M. on Friday.  Said wages shall be paid by check, in envelopes, upon which shall be plainly marked the employee's name, Social Security number, the hours worked, and the amount of money enclosed.  Any deductions from wages now or hereafter required by law shall also be marked on the face of the pay envelope.

**(b)**  If employees are not paid as specified above, time and one-half shall be paid for Friday between the hours of 5:00 P.M. and 7:00 P.M. and single time for working time thereafter, until paid, not exceeding fourteen (14) hours; provided however, that the employees report to and remain in the shop during the said fourteen (14) hours.

**Section 4.** <u>Drivers</u>. Where a member of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO fulfills the duties of a chauffeur or truck driver, his rate of wages shall be that of a shop journeyman Carpenter as provided in **Article VI, Section 1 (a)** above.

## Article VII
## <u>UNION LABEL</u>

**Section 1.** <u>The Union Label</u>. The Union Label, when furnished by the Union must appear on all work manufactured in the shop or mill of the Employer. This label is to be held in the possession of the Shop Steward to be appointed by the Union.

**Section 2.** <u>Application</u>. It is hereby understood and agreed by the Employer and the Union that an application shall be made for the Union Label to the First General Vice President of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("*U.B.C.*"). If the application is approved, and the Union Label is issued by the U.B.C., to be placed upon the Employer's products, it is understood and agreed that the Label shall remain the property of the U.B.C. and shall be at all times in the possession of a member of the U.B.C. Said Union Label shall at no time be used in a manner that will be detrimental to the interests and welfare of the United Brotherhood, and upon evidence that said Union Label is being used in a manner detrimental and harmful to the members of the U.B.C., then use of said Label shall immediately be withdrawn from the mill, shop, factory, or manufacturing establishment of the Employer at any time, and <u>at the discretion of the U.B.C</u>.

## Article VIII
## <u>APPRENTICESHIP SYSTEM</u>

**Section 1.** <u>Apprenticeship Training Plan</u>. The Employer and the Union shall take prompt action to set up and maintain an apprenticeship-training plan and/or system, which will insure an adequate force of skilled mechanics. The system shall be set up and supervised by a Joint Apprenticeship Council consisting of an equal number of five (5) representatives of the Employer and an equal number of five (5) representatives of the Union.

Section 2. Ratio of the Apprentices to Journeymen.  Where four (4) to ten (10) Journeymen are employed, there shall be one (1) apprentice.  Where fourteen (14) to twenty (20) Journeymen are employed, there shall be two (2) apprentices.  Where twenty-four (24) to thirty (30) Journeymen are employed, there shall be three (3) apprentices.

Section 3. Conformity with Prevailing Law.  It is the understanding of the parties, as set forth above, that the use of apprentices shall be mandatory and in conformity with applicable Federal and New York State laws.

## Article IX
## SHOP STEWARD

There shall be a Shop Steward who will be appointed by the Union or its representatives to attend to the interests of the Union, and for the performance of such duty, the Employer shall allow reasonable time.  It shall be mandatory upon the Shop Steward to blow the whistle for the beginning and end of the work shifts promptly at 8:00 A.M. and at 12:00 P.M., and promptly at 12:30 Noon and at 4:30 P.M. (or 5:00 P.M. if the option of a one (1) hour lunch period is exercised).  When the Shop Steward has completed his work on behalf of the District Council, he shall perform any work within his trade assigned to him by the Employer.

## Article X
## FRINGE BENEFITS

Section 1. Contributions.  Each Employer shall make contributions on behalf of all employees covered by this Agreement and employed by said Employer within the scope of this Agreement, from the first day of employment to the New York City District Council of Carpenters Welfare Fund; Pension Fund; Annuity Fund; Apprenticeship, Journeyman, Retraining, Educational and Industry Fund; Vacation Fund; Supplemental Funds (Scholarship Fund, and Charity and Relief Fund); and the National Labor Management Committee for the

Custom Woodworking Industry all in an amount or amounts called for in this Agreement.

Section 2. Welfare and Pension. Every signatory Employer shall contribute to the New York City District Council of Carpenters Welfare and Pension Funds the following sums on behalf of all covered employees under this Agreement for each hour worked:

| Effective: | Welfare Fund | Pension Fund |
|---|---|---|
| July 1, 1997 | **$5.54** | **$1.20** |

Section 3. Apprenticeship Fund. Every signatory Employer shall contribute to the New York City District Council of Carpenters Apprenticeship, Journeymen, Retraining, Education and Industry Fund (A.J.R.E.I.F.) a sum equal to fifteen cents (**$0.15**) per hour for each hour worked by covered employees.

Section 4. Vacation Fund. Every signatory Employer shall contribute one dollar and fifty (**$1.50**) cents per hour worked to the New York City District Council of Carpenters Vacation Fund.

Section 5. Annuity Fund. Every signatory Employer shall contribute fifty (**$.50**) cents per hour worked to the New York City District Council of Carpenters Annuity Fund.

Section 6. Supplemental Funds. **(a)** Every signatory Employer shall contribute two and one-half (**$0.025**) cents per hour worked to the New York City District Council of Carpenters Supplemental Funds. Said contribution shall be allocated in the following manner:

| Effective: | Charity & Relief Fund | Scholarship Fund |
|---|---|---|
| **July 1, 1997** | **$0.01** | **$0.015** |

The Supplemental Fund shall be established in accordance with applicable law, and any Employee authorization that is required shall be secured by the Union.

**(b)** The Carpenters Relief and Charity Fund. The purpose of the Carpenters Relief and Charity Fund is to enable the parties to make charitable donations from time to time. Said donations shall be made to duly recognized tax exempt institutions within the meaning of the Internal Revenue Code and to provide emergency assistance to bona fide victims of disaster, catastrophe and community projects for the good of the general public. The contributions shall be included in the payment of the Fringe Benefit Stamp. The Fund shall be administered by two persons, one designated by the Union and the other by the Employer Associations. Both shall serve without pay and shall be bonded as required by law. All Funds received shall be deposited in a bank selected by the two administrators and shall be

disbursed only by a check signed by both administrators. At least once a year the entire balance of the Fund on hand shall be disbursed to organizations and persons who meet the qualifications set forth above. The administrators shall keep such books or records as may be necessary. Once a year the administrators shall account for all monies received and disbursed.

Section 7. The National Labor Management Committee for the Custom Woodworking Industry Fund. Every signatory Employer shall contribute one and one-half (**$.015**) cents per hour worked to the National Labor Management Committee for the Custom Woodworking Industry Fund.

Section 8. Audits. The Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Funds, and failure to make proper and timely contributions hereunder may subject the Employer to the procedures set forth herein for collecting delinquencies. All Employer's books and payroll records shall be made available at all times upon the demand of the Trustees of the said Funds for audit and inspection by a representative of the said Trustees during all reasonable business hours.

Section 9. Re-allocations. If any of the above allocations are determined to be, in the opinion of Counsel, legally improper, then in that event, said allocations may be reallocated by the Union to a presently existing Fringe Benefit Fund, or to another fund to be established by the Union and the Employer.

Section 10. Trust Agreements and Bylaws. The Employer shall be bound by all the terms and conditions of all the Agreements and Declarations of Trust establishing the Fringe Benefit Funds, and by all by-laws regulating each of the said Funds provided same are not inconsistent with any of the terms and conditions of this Agreement. The Employer acknowledges that he has received copies of the various and respective Agreements and Declarations of Trust and any Plans thereunder pertaining to the aforementioned Funds, and is fully familiar with the terms and conditions of all the said documents, and agrees to be fully bound thereby as though the said Agreements and Declarations of Trust and Plans thereunder were fully set forth herein, and are all deemed to be incorporated within the framework of this Agreement. If during the life of this Agreement, the Trustees of any fringe benefit fund adopt a rule which provides for personal liability of an owner of an Employer

corporation to pay fringe benefit contributions due under this Agreement, such Rule of the Trustees will not be a basis for enforcing personal liability for said payment under this Agreement.

      **Section 11.** <u>Default</u> <u>and</u> <u>Breach</u>. **(a)** The breach of or default in any of the terms and conditions of the aforementioned Agreements and Declarations of Trust and Plans thereunder shall be considered to be, at the election of the Union, a breach of this Collective Bargaining Agreement. It is the current policy of the Trustees of the Funds to provide four-teen (14) days prior notice of a delinquency to permit the Employer to comply with all conditions in said notice of default, timely.

      **(b)** Whenever the Employer is declared to be in default on the payments to the aforementioned Funds or in failing to report to the various Funds as aforementioned, the Union may remove its members without notice from their work with the Employer. If such members who are removed remain at the job site of plant or other Employer's premises during regular working hours, they shall be paid for lost time, not to exceed three (3) days' pay.

      **(c)** In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s) the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

      **(1)** the unpaid contributions; plus

      **(2)** interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus

      **(3)** an amount equal to the greater of -

            **(a)** the amount of the interest charges on the unpaid contributions as deter-mined in **(2)** above, or

            **(b)** liquidated damages of 20% of the amount of the unpaid contributions; plus

      **(4)** reasonable attorney's fees and costs of the action; and

      **(5)** such other legal or equitable relief as the court deems appropriate.

      **(d)** In the event proceedings are to be instituted before an arbitrator under **Section 12** of this **Article X** to collect delinquent contributions to a Benefit Fund or Funds, and if such

arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under this Agreement and the Declaration of Trust establishing the Fund(s), or as permitted by law.

Section 12. Arbitration. (a) Should any dispute or disagreement arise between the parties, hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator(s) designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator(s) and serving a copy of said notice on the Association, or the Union, as the case may be.

(b) Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened and the arbitrator shall submit his award within twenty (20) days of the close of the hearing. The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages. The arbitrator's award shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction. The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

(c) The Employer agrees to obtain a list of arbitrators from the American Arbitration Association at its cost, upon execution of this Agreement. The District Council and Employer shall each select two arbitrators to act as permanent impartial arbitrators hereunder. The list of four permanent arbitrators will be appended hereto and incorporated herein as Exhibit "A." In the event none of the arbitrators are willing or able to serve as impartial arbitrator, the New York State Employment Relations Board shall designate an impartial arbitrator to serve in his place and stead.

(d) The agreement of the parties to submit said matters regarding the payment of contributions to an arbitrator does not excuse the employer from any statutory, civil or criminal liability which may attach to his actions under Municipal, State or Federal law. The submission of a matter to arbitration is in no way meant to affect the right of the Union to remove its members from an Employer's premises, as provided for in this Agreement.

Section 13. Stamp Plan. (a) A stamp plan has been established which provides for

the payment of contributions to the New York City District Council of Carpenters Welfare Fund; Pension Fund; Annuity Fund; Apprenticeship, Journeyman, Retraining, Educational and Industry Fund; Vacation Fund; Supplemental Funds (Scholarship Fund, and Charity and Relief Fund); and the National Labor Management Committee for the Custom Wood-working Industry and through the purchase of a consolidated Stamp. **(b)** The Employer will comply with the procedures established by the Benefit Fund Trustees to assure that the employee receives the consolidated Stamp with his pay. The Stamp shall be purchased through facilities established by The Bank of New York or other such agency authorized by the Trustees.

**Section 14.** Hours Worked. The Employer agrees that in the event that the Employer in its discretion, pays an employee for hours not worked, it will not be required to submit employee fringe benefit contributions, provided that the Employer notifies the District Council within four (4) days of the payment of said wages for said hours.

## Article XI

## BONDING

Every Employer covered by this Agreement required to post a surety bond shall provide a Surety bond to guarantee payment to the respective Funds for all fringe benefits. Bonds shall be in the following amounts:

Employer employing 1 to 5 employees........... $  5,000.00

Employer employing 6 to 10 employees..........$ 10,000.00

Employer employing 11 to 25 employees........$ 15,000.00

Employer employing over 25 employees.........$ 25,000.00

Employer employing over 150 employees......$100,000.00

If the Employer falls delinquent in its payments to the Fringe Benefits Funds for a period in excess of three (3) months, then its Surety Bond requirement shall be increased as follows:

Employer employing 1 to 5 employees...........$  5,000.00

Employer employing 6 to 10 employees.........$ 10,000.00

Employer employing 11 to 25 employees.......$ 15,000.00

Employer employing over 25 employees........$ 25,000.00

Employer employing over 150 employees.....$150,000.00

## Article XII
## <u>DUES</u> <u>CHECK</u> <u>OFF</u>

**Section 1.**  <u>Dues Deductions</u>.  The Employer agrees to deduct the Union's monthly dues and initiation fees imposed from the pay of each employee from whom it received written authorization, and shall continue to make such deductions while the authorization remains in effect.

**Section 2.**  <u>Remittance of Dues</u>.  Such deductions shall be made from the first full pay period worked by such employee following receipt of this dues deduction authorization, and thereafter shall be made the first payday each month and forwarded to the Union not later than the third Friday in each and every current month.  The dues deductions shall constitute trust funds while in the possession of the Employer.

**Section 3.**  <u>Renewal of Authorizations</u>.  If an employee does not revoke his authorization at the end of the year following the date of authorization or at the end of the current Agreement, whichever is earlier, it shall be deemed a renewal of authorization, irrevocable for another year or until the expiration of the next succeeding Agreement, whichever is earlier.

## Article XIII
## <u>HARDSHIP AND ADVISORY COMMITTEE</u>

**Section 1.**  <u>Establishment of Board</u>.  The Committee is to replace the "Joint Adjustment Board" as established in this section and assume all it's duties.  In addition the new Committee will have authority to address, in a timely fashion, any undue hardships this Agreement may impose on the Union, an employer or the Association on an issue by issue basis. The Committee may modify terms and conditions to allow the said employer manage its particular project or to compete against unfair contractors on a site by site basis.  All issues the Hardship and Advisory Committee reviews will be submitted in writing and its ac-

tions will be decided by a simple majority. All concerns brought before the Committee will be reviewed periodically. Repetitious issues can be recommended for inclusion in a subsequent collective bargaining agreement. The Committee will meet, upon written request, by the Employer or the Union within three work days. Such request, by fax or letter, shall state the project location, local union, employer, sub-contractor and brief summary of the question discussed.

      **Section 2**. <u>The Committee and its Purpose</u>.    The Committee shall consist of an equal number of representatives of the Union and the Employer, and being at all times no less than three (3) nor more than five (5) on each side, respectively, and is hereby established for the purpose of meeting and consulting with each other from time to time in connection with any problems or disputes that may arise in the Industry, or under this Agreement, and for the purpose of resolving same when they shall so arise.

## Article XIV
## <u>GRIEVANCE</u> <u>AND</u> <u>ARBITRATION</u>

      **Section 1**. <u>Grievance</u>. Any grievance or dispute arising under the terms and conditions of the Agreement, except claims related to fringe benefits contributions, must be brought to the attention of the Employer in writing within thirty (30) calendar days of its occurrence or when the dispute arose, otherwise such grievance or dispute shall be barred. If at any time, however, there arise any differences or disputes under this Agreement respecting the interpretation or construction of any clauses herein, or with respect to the breach of performance hereof, then the same may, on demand of either of the parties hereto, shall be submitted for decision and award to an arbitrator designated by the American Arbitration Association, pursuant to its rules and regulations, and the expense of such arbitration shall be borne equally by the parties.

      **Section 2**. <u>Lock-Outs</u> <u>and</u> <u>Strikes</u>. During the term of this Agreement, and pending the adjustment of any disputes by the contract arbitrator, there shall be no sit-downs, work stoppages, or lockouts by either the Union or the Employer, except in the case of failure by either of the parties to abide by such arbitration award as aforementioned, or as provided in this Agreement.

**Section 3**.  Lay-Off of Shop Steward.  The parties specifically agree to exclude from this arbitration clause any question or dispute arising over the lay-off of the shop steward.  In the event such dispute shall arise, said dispute shall be resolved by the Employer and the business agent of the local union and in the event such question or dispute cannot be re-solved, then it shall be referred to an officer of the District Council for resolution.  The Em-ployer shall notify the local union involved prior to the layoff of the shop steward.

**Section 4**.  Prevention of Job Discrimination.  In accordance with the desire of the parties hereto to provide equitable terms of employment and conditions of labor satisfactory to Employer and covered employees and to provide methods for fair and peaceful adjust-ment to all disputes that may arise between the parties hereto, the Union and the Employer recognize the principle of fair working conditions for the protection of the employees.  Should any employee claim discrimination, the following procedure will apply in processing a griev-ance:

(a)    Within twenty-four (24) hours after the grievance has arisen, the employee shall submit to the foreman and shop steward the details of the grievance in writing, and signed by such employee, which they will attempt to resolve in twenty-four (24) hours.

(b)    If the efforts to settle such grievance shall fail, then within twenty-four (24) hours thereafter, the grievance will be discussed between an official of the Employer and a Union Representative who will attempt to resolve the issue within no later than forty-eight (48) hours.

## Article XV
## LOSS OF TOOLS OR CLOTHING

The Employer shall be responsible for loss of tools or clothing in the shop.  Such li-ability shall be limited to sums not to exceed the following:

Tools...............$400.00

Overcoat...........$100.00

Clothing............$100.00

Shoes..............$  40.00

## Article XVI
## DEATH BEREAVEMENT

Employees in the employ of an Employer for two (2) consecutive years shall receive three (3) days off with pay for death in the immediate family, which includes mother, father, brother, sister, child or spouse only.

## Article XVII
## WORK WEEK MODIFICATION

The parties agree that by mutual consent they will discuss the reduction in the length of the work week should economic conditions in the Industry indicate that there will be an excess of labor and a shortage of work. However, it is understood that should the work week be reduced, it is not intended that the Employer will suffer financially through increased cost.

## Article XVIII
## CONTINUITY OF CONTRACT

Should any signatory Employer relocate its plant or business establishment in a geographical area outside of the jurisdiction of the Union, the terms and conditions of this Agreement shall remain in effect during the term of this Agreement, or until its expiration date.

## Article XIX
## JOINT VENTURE

When an Employer enters into a Joint Venture with an employer who is not bound by this Agreement, the Joint Venture must become a signatory bound to this Agreement before the District Council will refer applicants for employment. Each Joint Venturer shall comply with the Bonding provisions in **Article XI**.

## Article XX
## OTHER OPERATIONS

**Section 1.** Work Preservation Clause. **(a)** In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed that if and when the Employer shall perform any work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer exercises either directly or indirectly any significant degree of ownership management or control, the terms and conditions of this Agreement including Fringe Benefits shall be applicable to all such work.

**(b)** All charges of violations of **subsection (a)** of this **Section 1 of Article XX** shall be considered a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in **Article XIV** of this Agreement.  As a remedy for violations of this **Article XX**, the contract arbitrator provided for in **Article XIV**, is empowered, at the request of the Union, to require an Employer:

    **(1)** to pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations and

    **(2)** to pay into the affected joint trust funds established under this Agreement any delinquent contributions together with interest, penalties and liquidated damages to such funds, which have resulted from such violation(s).

Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union or the Trust Funds for violation of this **Section**; nor does it make the same, or other remedies unavailable to the Union or the Trust Funds for violations of other Articles or Sections of this Agreement.

**Section 2.** Fees and Costs.  If, as a result of violations of this **Article XX**, it is necessary for the Union and/or the Trustees of the Benefit Funds to institute court action to en-

force an award rendered in accordance with **subsection (b)** above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund trustees, plus costs of litigation, which have resulted from the bringing of such court action.

## Article XXI
## UNION ACCESS

The Employer shall permit the Business Representatives of the Union to have access to the shops of the jobs of the Employer at all times.

## Article XXII
## PRIOR BENEFITS

This Agreement shall not be construed to deprive any covered employee presently employed by the Employer of any better benefits that said employee might have had prior to the signing of this Agreement. The Employer shall not enter into any individual agreement that would have had the effect of diminishing any of the rights, privileges or benefits of the covered employees under this Agreement.

## Article XXIII
## INDUSTRY PROMOTIONAL FUND

All Employers covered by this Agreement shall contribute three **($.03)** cents for each hour of employment of covered employees to the Industry Promotional Fund of the Manufacturing Woodworkers' Association Of Greater New York, Inc. The District Council agrees to cooperate with the Employer to ascertain that all signatory employers that contribute to the M.W.A. Promotional Fund have made proper contributions to the Promotional Fund, provided that such accounting does not interfere with the day-to-day operations of the New York City District Council of Carpenters Benefit Funds.

## Article XXIV
## MANAGEMENT RIGHTS

The operation of the Employer's business and the direction of the employees are the sole and exclusive responsibility of management. The Employer shall therefore have the right to hire, maintain order and efficiency, transfer, discipline or discharge for just cause. The Employer may regulate and control the number of employees and their duties necessary for the operation of the Employer's business, promulgate reasonable rules and regulations, layoff, direct and supervise the duties and starting time of the employees and take all other steps and actions not specifically limited by this Agreement. The failure of the Employer to exercise any of these rights, among others, shall not be construed as a waiver of such rights.

## Article XXV
## AUTOMATIC RENEWAL AND EXPIRATION

This Agreement shall be binding on the Employer and the Union, their successors and assigns. This Agreement constitutes the complete understanding between the parties as to the subject matter herein. All other agreements made or entered into prior to the date of execution by both parties hereof are superceded and merged into this Agreement. The duration of this Agreement shall continue until **June 30, 2002** and shall be renewed automatically for one year intervals thereafter unless notice to the other at their last known address has been provided by either party by certified and regular mail no more than ninety **(90)** days nor no less than sixty **(60)** days before this Agreement's expiration that such party seeks to negotiate a new agreement or modify or amend this Agreement through negotiations. Once negotiations have commenced, neither party will seek to alter unilaterally the terms or conditions of employment of employees covered by this Agreement until such terms have been changed by execution of a newly negotiated agreement. Neither party shall have the right to waive or modify any provision of this Agreement without the mutual consent of both parties.

## Article XXVI

## SAVINGS CLAUSE

In the event that any of the provisions of this Agreement shall now or hereafter be declared or held to be in violation of any law or regulation, then, the parties agree to meet within seventy-two (72) hours to bargain in good faith and to reach agreement on a new provision to accomplish the lawful purposes of the stricken provision to the greatest extent permitted.    The new provision shall be deemed retroactive to the effective date of this Agreement.    If the parties fail to agree on a substitute provision within seventy-two (72) hours of commencing negotiations, the parties agree to resolve this dispute pursuant to the Grievance and Arbitration procedures set forth in **Article XIV** of this Agreement.

## Article XXVII

## RETROACTIVITY

It is mutually agreed that all wages, contributions and terms and conditions of employment as herein contained is retroactive and effective as of July 1, 1997.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be signed the day and year above written.

EMPLOYER:     **ARCHITECTURAL METALS AND**
     **STORE FRONT CONTRACTORS ASSOCIATION**

By: _____     DONALD F. MANCUSO
     (OFFICER'S SIGNATURE & TITLE)          (PRINT NAME)

Date: ___12·3·99___

**UNION:**
**DISTRICT COUNCIL OF NEW YORK CITY AND**
**VICINITY, UNITED BROTHERHOOD OF**
**CARPENTERS AND JOINERS OF AMERICA, AFL-CIO**

By: _____
     (DISTRICT COUNCIL OFFICER'S SIGNATURE)

Date: _____

## ACKNOWLEDGEMENT OF RECEIPT OF COPIES
## OF AGREEMENTS AND DECLARATIONS OF TRUST

The Employer herein, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreements and Declarations of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeyman Retraining, Education; Industry Fund; Vacation Fund; Annuity and Supplemental Funds.

## ARCHITECTURAL METALS AND
## STORE FRONT CONTRACTORS ASSOCIATION

(Name of Individual, Partnership or Corporation)

By: _____            DONALD F. MANCUSO _____

(OFFICER'S SIGNATURE & TITLE)          (PRINT NAME)